Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Spencer Wolgang (SW 2389)
swolgang@ipcounselors.com
Mary Kate Brennan (MB 5595)
mbrennan@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:      (212) 292-5391
*Attorneys for Plaintiffs*
*Moose Toys Pty LTD; Moose Creative Pty LTD;*
*Moose Enterprise Pty LTD; and*
*Moose Creative Management Pty LTD*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOOSE TOYS PTY LTD, MOOSE CREATIVE PTY LTD, MOOSE ENTERPRISE PTY LTD, and MOOSE CREATIVE MANAGEMENT PTY LTD, <br><br> *Plaintiffs* <br><br> v. <br><br> ADDITION, AMAZINGHOURSE, AMAZING-WOMEN, AQWXHYG, BABOHOUSE, BABY E-COMMERCE, BABY_MUMMY, BANANA BOW, BAYUEGESANG,                      BEAR'S-PAW, BESTFRUITBASKET, BESTU, BIGGDERAM, BLACKROSEFLOWER,                     BRANTY, CANDINYSEASON,           CHEAPCHEAPHOME, CHENSIPENG, CHENXINTAO, CHINA GOOD COMMODITY,        CINDERELLA      CASTLE, CLOUDLING,           CYLIN,          DEALMORE, DMENZHIHAO, ETERNAL FADE, FEMALE'S SHOP, FREDERICA7, FUKEYANG, FULLSTARS, FUQIAN1993,         GILT,        GONGJIYAYAYA, GOODSGOGO,        GREATTOUCH,        HMKERY, | **CIVIL ACTION No. ___** <br><br><br><br> **COMPLAINT** <br><br> **Jury Trial Requested** <br><br> **FILED UNDER SEAL** |

HUYAFEI58, IBAY, JIANGMEIQIN, JUSTEPEAN, JUZIAIMEILI, LAOTAITAISHOP, LEOLIN459, LEOPARD 666, LHZHENG875, LIBERTY CUTE, LIUXIAOXUE, LIXIAOLI123LIXIAOLI, LIYAN11, LIYANQING, LOCAL_KING, LOVEINSEATTLE, LUOPINGYAN1985, MIKE1992, MINI. COCCO, MINMINNVZHUANG, NANJIEMAYUN, NUAN XIAO WU, OPPOHERE, PENGPENGHUI520, PENGXIAOYUE, QINGGUOCHAODIAN, REDROSEFLOWER, RENEWIT, SELF-ABANDONMENT PEOPLE, SHANGDONGSHANG, SHENGHUOYANGGUANGYULU, SIMSPEELGOED, SMILELIKEACHILD, SPARKLESHINE, SUP_INN, TENGXWYAPP, THE DEW FOOTWEAR, VASIONTOPMERIT, VISIONALPARK, WAITINGFOUYOU, WANGDACHUI, WANGTONG992, WANGWANWAN520520, WEIXIAOMING1, WENWEN198905011, WHITE IN, WSXERN, WZJWZJ, XIANGTINGTING345, XIAOBAOZHEN, YALIPUJIANG, YANGYONGBANG, YUEMEIRENAIYUE, ZHANGDONGMEI43, ZHANGNISTORE, ZHUAOHUANHUAN0606, ZJUN156 and ZYT15919,

*Defendants*

Plaintiffs Moose Toys Pty LTD ("Moose Toys"), a proprietary limited company organized and existing under the laws of Australia, Moose Creative Pty LTD ("Moose Creative"), a proprietary limited company organized and existing under the laws of Australia, Moose Enterprise Pty LTD ("Moose Enterprise"), a proprietary limited company organized and existing under the laws of Australia, and Moose Creative Management Pty LTD ("Moose Management"), a proprietary limited company organized and existing under the laws of Australia (Moose Toys, Moose Creative, Moose Enterprise and Moose Management are hereinafter collectively referred to as "Moose" or "Plaintiffs"), by and through their undersigned counsel, allege as follows:

## NATURE OF THE ACTION

This action involves claims for trademark infringement of Plaintiffs' federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.*; counterfeiting of Plaintiffs' federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); copyright infringement of Plaintiffs' federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* and related state and common law claims (the "Action"), arising from Defendants addition, amazinghourse, amazing-women, AQWxhYG, babohouse, BABY E-commerce, baby_mummy, banana bow, bayuegesang, Bear's-paw, bestfruitbasket, bestu, biggderam, blackroseflower, Branty, candinyseason, cheapcheaphome, chensipeng, chenxintao, China good commodity, Cinderella castle, CLOUDLING, Cylin, Dealmore, dmenzhihao, eternal fade, Female's shop, Frederica7, fukeyang, Fullstars, fuqian1993, Gilt, gongjiyayaya, goodsgogo, Greattouch, hmkery, huyafei58, Ibay, jiangmeiqin, justepean, juziaimeili, laotaitaishop, LEOLIN459, leopard 666, lhzheng875, liberty cute, liuxiaoxue, lixiaoli123lixiaoli, liyan11, liyanqing, local_king, Loveinseattle, luopingyan1985, Mike1992, Mini. Cocco, minminnvzhuang, nanjiemayun, nuan xiao wu, oppohere, pengpenghui520, pengxiaoyue, qingguochaodian, Redroseflower, renewit, self-abandonment people, shangdongshang, shenghuoyangguangyulu, Simspeelgoed, smilelikeachild, SparkleShine, Sup_inn, tengxwyapp, The dew footwear, vasiontopmerit, visionalpark, waitingfouyou, wangdachui, wangtong992, wangwanwan520520, weixiaoming1, wenwen198905011, White In, wsxern, wzjwzj, xiangtingting345, xiaobaozhen, yalipujiang, yangyongbang, yuemeirenaiyue, zhangdongmei43, zhangnistore, zhuaohuanhuan0606, zjun156 and zyt15919 (hereinafter collectively referred to as "Defendants" or individually as "Defendant") infringement of the Pikmi

Pops Marks (as defined *infra*) and Pikmi Pops Works (as defined *infra*), including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiffs' Pikmi Pops Products (as defined *infra*).

## JURISDICTION AND VENUE

1.     This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

2.     Personal jurisdiction exists over Defendants in this judicial district pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this judicial district, and/or derive substantial revenue from their business transactions in New York and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to

Plaintiffs in New York and in this judicial district such that Defendants should reasonably expect such actions to have consequences in New York and in this judicial district, for example:

     a. Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Wish (as defined *infra*) as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Accounts"), through which consumers in the U.S., including New York, can view the one or more of Defendants' Merchant Storefronts (as defined *infra*) that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products (as defined *infra*) and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

     b. Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses using their respective User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("Merchant Storefront(s)") in wholesale

quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

c. Upon information and belief, a majority of Defendants' Merchant Storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S.

d. Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address (as defined *infra*).

e. Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

f. Upon information and belief, Defendants are aware of Plaintiffs, their Pikmi Pops Products, Pikmi Pops Marks and Pikmi Pops Works, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiffs in the U.S. and specifically, in New York and this judicial district.

3.     Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact, and/or solicit business in this judicial district.

## THE PARTIES

4.     Plaintiff Moose Toys is a proprietary limited company organized and existing under the laws of Australia, having a principal place of business at 29 Grange Road, Cheltenham, Melbourne VIC 3192, Australia, and has a license to use the Pikmi Pops Marks and the Pikmi Pops Works in connection with the distribution and sale of the Moose Products and Pikmi Pops Products in the U.S.

5.     Plaintiff Moose Creative is a proprietary limited company organized and existing

under the laws of Australia, having a principal place of business at 29 Grange Road, Cheltenham, Melbourne VIC 3192, Australia.

6.      Plaintiff Moose Enterprise is a proprietary limited company organized and existing under the laws of Australia, having a principal place of business at 29 Grange Road, Cheltenham, Melbourne VIC 3192, Australia.

7.      Plaintiff Moose Management is a proprietary limited company organized and existing under the laws of Australia, having a principal place of business at 29 Grange Road, Cheltenham, Melbourne VIC 3192, Australia.

8.      Upon information and belief, Defendants are merchants on the Wish.com online marketplace platform, which, upon information and belief, is owned by ContextLogic, Inc., a Delaware corporation with a principal place of business at One Sansome Street, 40th Floor, San Francisco, CA 94104, through which Defendants offer for sale and/or sell Counterfeit Products.

## GENERAL ALLEGATIONS

### Plaintiffs and Their Well-Known Pikmi Pops Products

9.      Plaintiffs are an Australian-based, family-owned business, founded in 1985 that designs, develops, markets and sells innovative children's lifestyle products and toys ("Moose Product(s)") under their well-known brands, including Shopkins, Pikmi Pops, The Trash Pack, Glitzi Globes, Little Live Pets, The Ugglys, Chocolate Bar Maker, Beados and The Zelfs, among others ("Moose Brand(s)").

10.     Plaintiffs sell their Moose Products in over eighty (80) countries worldwide, through major retailers, quality toy stores, department stores and online marketplaces, including, but not limited to: Walmart, Toys R Us, Justice, Target, Kohls, Amazon.com and many others.

11.     One of the most popular Moose Brands is Pikmi Pops, a plastic lollipop vessel with a sweet-smelling, miniature plush character and an assortment of "surprises," such as stickers, charms and unique messages inside the lollipop vessel ("Pikmi Pops Products").

12.     Currently, Moose has released three (3) series (or seasons) of its Pikmi Pops Products (hereinafter referred to as "Series" or "Seasons"), and there are over sixty (60) miniature plush characters that come in a variety of sweet scents, including chocolate, bubblegum, watermelon and more.

13.     Since their launch in 2017, the Pikmi Pops Products have been widely successful in becoming a must-have children's toys.

14.     Moose has received over forty (40) industry awards for its Moose Products and its Pikmi Pops Products were nominated for both Collectible of the Year and Plush Toy of the Year at the 2017 Toy of the Year Awards.  Additionally, the NPD Group, a market research firm that tracks consumer trends, named Moose's Pikmi Pops Products as the number one new brand.[1]

15.     While Moose has gained significant common law trademark and other rights in its Pikmi Pops Products, through use, advertising, and promotion, Moose has also protected its valuable rights by filing for and obtaining federal trademark registrations.

16.     For example, Plaintiffs are the owners of U.S. Trademark Registration No. 5,455,654 for the wordmark "PIKMI POPS SURPRISE!" for a wide variety of goods in Classes 16 and 28, U.S. Trademark Registration No. 5,357,254 for "PIKMI POPS" for a variety of goods in Classes 16 and 28, U.S. Trademark Registration No. 3,363,052 for  for a for a wide variety of goods in Classes 22, 23, 28, 38 and 50 and U.S. Trademark Registration No. 5,178,557 for

---

[1] *See*, MOOSE TOYS, *NPD names Pikmi Pops number one new brand*, available at https://www.moosetoys.com/news-and-media/npd-names-pikmi-pops-number-one-new-brand.

for a wide variety of goods in Classes 9, 16 and 28 (collectively, hereinafter referred to as the "Pikmi Pops Marks"). True and correct copies of the registration certificates for the Pikmi Pops Marks are attached hereto as **Exhibit A** and incorporated herein by reference.

17.     The Pikmi Pops Marks are currently in use in commerce in connection with the Pikmi Pops Products. The Pikmi Pops Marks were first used in commerce on or before the dates of first use as reflected in the registration certificates attached hereto as Exhibit A.

18.     In addition, Plaintiffs are also the owners of both registered and unregistered copyrights in and related to the Pikmi Pops Products.

19.     For example, Plaintiffs are the owners of U.S. Copyright Registration No. VA 1-2-073-582 covering the Pikmi Pops Collector's Guide and characters, U.S. Copyright Registration No. VA 2-078-671 covering the Pikmi Pops Packaging Artwork and U.S. Copyright Registration No. VA 2-100-433 covering the Pikmi Pops Season 2 Collector's Guide and characters, as well as numerous common law copyrights (hereinafter collectively referred to as the "Pikmi Pops Works"). True and correct copies of the U.S. Copyright registration certificates for the Pikmi Pops Works are attached hereto as **Exhibit B** and incorporated herein by reference.

20.     Plaintiffs have spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in their Pikmi Pops Products, Pikmi Pops Marks and Pikmi Pops Works.

21.     The success of the Pikmi Pops Products is due in part to Plaintiffs' marketing and promotional efforts. These efforts include, but are not limited to, the advertising and promotion of the Pikmi Pops Products, nationwide television advertising campaigns for the Pikmi Pops Products, print and internet-based advertising and publicity for the Pikmi Pops Products,

placement of the Pikmi Pops Products at dozens of authorized major retail outlets, both domestically and abroad, and Plaintiffs' participation in trade shows.

22.     Plaintiffs' success is also due to their use of high quality materials and processes in making the Pikmi Pops Products.

23.     Additionally, Plaintiffs owe a substantial amount of the success of the Pikmi Pops Products to their consumers, and word-of-mouth buzz that their consumers have generated.

24.     Plaintiffs' efforts, the quality of Plaintiffs' products, and the word-of-mouth buzz generated by their consumers have made the Pikmi Pops Marks, Pikmi Pops Works and Pikmi Pops Products prominently placed in the minds of the public.  Members of the public and retailers have become familiar with Plaintiffs' Pikmi Pops Marks, Pikmi Pops Works and Pikmi Pops Products, and have come to associate them exclusively with Plaintiffs.  Plaintiffs have acquired a valuable reputation and goodwill among the public as a result of such association.

25.     Plaintiffs have gone to great lengths to protect their interests to the Pikmi Pops Products, Pikmi Pops Marks and Pikmi Pops Works.  No one other than Plaintiffs and their authorized licensees and distributors is authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Pikmi Pops Marks or Pikmi Pops Works without the express permission of Plaintiffs.

**Wish and Defendants' User Accounts**

26.     Wish.com is an online marketplace and e-commerce platform that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products originating primarily from China,[2] among other locations,

---

[2] *See* Armando Roggio, *Ecommerce Lessons from the Wish Shopping App*, PRACTICAL ECOMMERCE (Jan. 7, 2015), https://www.practicalecommerce.com/Ecommerce-Lessons-from-the-Wish-Shopping-App.

directly to consumers worldwide and specifically to consumers residing in the U.S., including New York (hereinafter, "Wish").

27.     A majority of the third-party merchants that have User Accounts with and operate Merchant Storefronts on Wish, like Defendants, are located in China.[3]  As of May 2015, over 40 million items from 100,000 User Accounts were available on Wish.[4]  Between June 2014 and May 2015, nearly 100 million distinct User Accounts became registered on Wish.[5]  Currently, Wish claims a base of over 300 million users.[6]  As one of the leaders of the worldwide e-commerce and digital retail market, Wish has generated billions in sales worldwide.[7]  Sales to the U.S. make up a significant percentage of the business done on Wish.  For example, online sales account for 8.6% of all retail transactions in the U.S., and nearly 8% of online shopping done by teenagers was performed using Wish, which is second only to Amazon.com.[8]  On Cyber Monday of 2017, Wish accounted for 6.2% of teenager spending.[9]  Currently, Wish is valued at over $8 billion, which is more than the market value of three of the largest traditional retailers in the U.S.[10]

28.     Wish aggressively uses the internet, including Facebook, Google and Pinterest, to market itself and the products offered for sale and/or sold by its third-party merchant users to potential consumers, particularly in the U.S.  For example, Wish is in the top-five largest

---

[3] *See* Greg Bensinger, *Wish, a Direct-From-China Shopping App, Lures Bargain Hunters*, WALL STREET JOURNAL (May 19, 2015), https://www.wsj.com/articles/wish-a-direct-from-china-shopping-app-lures-bargain-hunters-1431909072.
[4] *See id.*
[5] *See id.*
[6] *See* WISH.COM, https://www.wish.com/careers.
[7]*See* Connie Loizos, *Wish is Raising Again, and Giving Late-Stage Investors Protection*, TECHCRUNCH.COM (Oct. 28, 2016), https://techcrunch.com/2016/10/28/wish-is-raising-again-and-giving-late-stage-investors-protection/.
[8] *See* Deena M. Amato-McCoy, *Study: Teens Twice as Likely to Shop Online Than Adults*, CHAINSTOREAGE.COM (Oct. 16, 2017), https://www.chainstoreage.com/technology/study-teens-twice-likely-shop-online-adults/.
[9] *See* Marianne Wilson, *Teens hot on Black Friday, but cool on Cyber Monday*, CHAINSTORAGE.COM (Nov. 29, 2017), https://www.chainstoreage.com/real-estate/teens-hot-black-friday-cool-cyber-monday/.
[10] *See* Parmy Olson, *At $8.5 Billion, Shopping App 'Wish' Is Now Worth More Than Sears, Macy's and JC Penney Combined*, FORBES, https://www.forbes.com/sites/parmyolson/2017/09/20/wish-8-billion-funding-amazon/#c360ab961e1d.

advertisers on the aforementioned popular search engines and social media websites.[11] In 2015, Wish spent approximately $100 million on advertisements on Facebook alone.[12]

29.     As recently addressed in news reports,[13] and as reflected in the federal lawsuits filed against third-party merchants offering for sale and selling infringing and/or counterfeit products on Wish,[14] an astronomical number of counterfeit and infringing products are offered for sale and sold on Wish at a rampant rate.[15]

30.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and on their Merchant Storefronts on Wish as well as potentially yet undiscovered additional online marketplace platforms.

31.     Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

32.     Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

---

[11] *See* SENSORTOWER, MOBILE ADVERTISING ATLAS, Q2 2017 REPORT, *available at* https://s3.amazonaws.com/sensortower-itunes/Quarterly+Reports/Sensor-Tower-Q2-2017-Ad-Intel-Data-Digest.pdf?=landing.
[12] *See* Jason Del Rey, *Meet Wish, the $3 Billion App That Could Be The Next Walmart*, RECODE (Dec. 28, 2015), https://www.recode.net/2015/12/28/11621724/meet-wish-the-3-billion-app-that-could-be-the-next-walmart.
[13] *See* Andi Sykes, *Specialized Wages Ware on Counterfeiters* (Dec. 9, 2016), http://singletrackworld.com/2016/12/specialized-wages-war-on-counterfeiters/
[14] *See, e.g.*, *Specialized Bicycle Components, Inc. v. in-style1820, et al.*, Civil Case No. 16-cv-62711 (S.D. Fl. Nov. 17, 2016) and *David Gilmour Music Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, Civil Case No. 17-cv-7763 (N.D. Ill., Nov.1, 2017).
[15] *See* Tom Hoffarth, *Lakers' Wish List Cheapened by the Dozen*, DAILY NEWS (Sept. 22, 2017), http://www.dailynews.com/2017/09/22/hoffarth-lakers-wish-list-cheapened-by-the-dozen/.

33.     Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

## Defendants' Wrongful and Infringing Conduct

34.     Particularly in light of Plaintiffs' success with their Pikmi Pops Products, as well as the reputation they have gained, Plaintiffs and their Pikmi Pops Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiffs have amassed in their Pikmi Pops Products, Pikmi Pops Marks and the works embodied in the Pikmi Pops Works and Plaintiffs investigate and enforce against such activities.

35.     As part of these efforts, Plaintiffs retained New Alchemy Limited ("NAL"), a company that provides intellectual property infringement research services, to investigate and research manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling Counterfeit Products on online marketplace platforms such as Wish.

36.     Through NAL's investigative and enforcement efforts, Plaintiffs learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling products bearing or used in connection with the Pikmi Pops Marks and/or Pikmi Pops Works, and/or products in packaging and/or containing labels bearing the Pikmi Pops Marks and/or Pikmi Pops Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Pikmi Pops Marks and/or Pikmi Pops Works and/or products that are identical or confusingly or substantially similar to the Pikmi Pops Products (collectively referred to as, "Infringing Product(s)" or "Counterfeit Product(s)") to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts

13

and Merchant Storefronts.  Printouts of listings for Counterfeit Products from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit C** attached hereto and incorporated herein by reference.

37.     Defendants are not, and have never been, authorized by Plaintiffs or any of their authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Pikmi Pops Products or to use the Pikmi Pops Marks and Pikmi Pops Works, or any marks or artwork that are confusingly or substantially similar to the Pikmi Pops Marks or Pikmi Pops Works.

38.     Defendants' Counterfeit Products are nearly indistinguishable from Plaintiffs' Pikmi Pops Products, only with minor variations that no ordinary consumer would recognize.

39.     During its investigation, NAL identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located in in New York (the "New York Address") and verified that each Defendant provides shipping to the New York Address. Printouts of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit C** attached hereto and incorporated herein by reference.

40.     NAL confirmed that each Defendant was and/or is still currently offering for sale and/or selling Counterfeit Products through their respective Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars through Wish's own payment processing system ("Wish Payment System"), or through accounts with the payment processing agency PayPal, Inc. ("PayPal"), and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York.  NAL's findings are supported by Defendants' listings for Counterfeit Products and/or the checkout pages for the

Counterfeit Products, which are included in **Exhibit C** attached hereto and incorporated herein by reference.

41.     For example, below on the left is an image of one of Plaintiffs' Pikmi Pops Products, which typically retails for $10.99. Depicted below on the right is a listing for Defendant amazing_women's Counterfeit Product ("amazing_women Infringing Listing" and "amazing_women Counterfeit Product," respectively). The amazing_women Infringing Listing appears on Defendant baoxiaoxiao's Merchant Storefront, https://www.wish.com/c/5a2cac922495d417ae4d22d2, and offers the amazing_women Counterfeit Product for $10.00 per item, using, featuring and/or incorporating one or more of the Pikmi Pops Marks, the Pikmi Pops Works, and/or confusingly or substantially similar marks or artwork in the listing title "1pcs New Fashion Christmas Gift Surprise PVC Baseball Doll Baby Doll Inside Toy Cartoon **Pikmi Pops**" (emphasis added) and in the descriptions and/or product images in the body of the listing. Further, the amazing_women Counterfeit Product is virtually identical to one of Plaintiffs' Pikmi Pops Products and features and/or incorporates one or more of the Pikmi Pops Works and Pikmi Pops Marks. There is no question that the amazing_women Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiffs' Pikmi Pops Products or that the amazing_women Counterfeit Product is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of the Pikmi Pops Works and Pikmi Pops Marks:

**Pikmi Pops Product**                    **amazing_women Counterfeit Product**




42.   By way of another example, below on the left is an image of one of Plaintiffs' Pikmi Pops Products, which typically retails for $4.99.  Depicted below on the right is a listing for Defendant Female's Shop's Counterfeit Product ("Female's Shop Infringing Listing" and "Female's Shop Counterfeit Product," respectively).  The Female's Shop Infringing Listing appears on Defendant Female's Shop Merchant Storefront, https://www.wish.com/c/5a7ad621c7e80b05ed97013d, and offers the Female's Shop Counterfeit Product for $8.00 per item, using, featuring and/or incorporating one or more of the Pikmi Pops Marks, the Pikmi Pops Works, and/or confusingly or substantially similar marks or artwork in the listing title "**Pikmi Pops** Surprise Lollipop Shiny Pets Dolls Baby Kids Unpacking Bags Gifts Toy For Kids (Size 1 piece) FEM" (emphasis added) and in the descriptions and/or product images in the body of the listing.  Further, the Female's Shop Counterfeit Product is virtually identical to one of Plaintiffs' Pikmi Pops Products and features and/or incorporates one or more of the Pikmi Pops Works and Pikmi Pops Marks.  There is no question that the Female's Shop Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of

Plaintiffs' Pikmi Pops Products or that the Female's Shop Counterfeit Product is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of the Pikmi Pops Works and Pikmi Pops Marks:

| **Pikmi Pops Product** | **Female's Shop Counterfeit Product** |
| --- | --- |

 

43.     As another example, below on the left is an image of one of Plaintiffs' Pikmi Pops Products, which typically retails for $19.99. Depicted below on the right is a listing for Defendant weixiaoming1's Counterfeit Product ("weixiaoming1 Infringing Listing" and "weixiaoming1 Counterfeit Product," respectively). The weixiaoming1 Infringing Listing appears on Defendant weixiaoming1's Merchant Storefront, https:// https://www.wish.com/c/5a1d2e711b304a044312fc58, and offers the weixiaoming1 Counterfeit Product for $13.00 per item, using, featuring and/or incorporating one or more of the Pikmi Pops Marks, the Pikmi Pops Works, and/or confusingly or substantially similar marks or artwork in the listing title "**Pikmi pops** surprise baseball Doll fragrance plush doll toy ornaments magic funny barbie doll toy kids baby girls xmas toy" (emphasis added) and in the descriptions and/or product images in the body of the listing. Further, the weixiaoming1 Counterfeit Product is virtually identical to one of Plaintiffs' Pikmi Pops Products and features and/or incorporates one or more of

the Pikmi Pops Works and Pikmi Pops Marks.    There is no question that the weixiaoming1Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiffs' Pikmi Pops Products or that the weixiaoming1 Counterfeit Product is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of the Pikmi Pops Works and Pikmi Pops Marks:

**Pikmi Pops Product**                           **weixiaoming1 Counterfeit Product**

                           

    44.    By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiffs' exclusive rights in the Pikmi Pops Marks and Pikmi Pops Works, and have used marks, images and artwork that are confusingly and/or substantially similar to, identical to and/or constitute counterfeiting and/or infringement of the Pikmi Pops Marks and Pikmi Pops Works in order to confuse consumers into believing that such Counterfeit Products are Pikmi Pops Products and aid in the promotion

and sales of their Counterfeit Products.  Defendants' conduct began long after Plaintiffs' adoption and use of the Pikmi Pops Marks and Pikmi Pops Works, after Plaintiffs obtained the federal registrations in the Pikmi Pops Marks and Pikmi Pops Works, as alleged above, and after Plaintiffs' Pikmi Pops Products, Pikmi Pops Marks and Pikmi Pops Works became well-known to the purchasing public.

45.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiffs' ownership of the Pikmi Pops Marks and Pikmi Pops Works, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Pikmi Pops Products, and in bad faith adopted the Pikmi Pops Marks and Pikmi Pops Works.

46.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs, the Pikmi Pops Marks, Pikmi Pops Works and Pikmi Pops Product.

47.     Defendants' dealings in Counterfeit Products, as alleged herein, have caused, and will continue to cause confusion, mistake, economic loss, and have deceived and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiffs, thereby damaging Plaintiffs.

48.     In engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiffs: infringed and counterfeited the Pikmi Pops Marks, infringed

the Pikmi Pops Works, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiffs' expense.

49. Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiffs.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Trademark Counterfeiting Under Sections 32, 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d) and 1117(b)-(c)))

50.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

51.     Plaintiffs are the exclusive owners of all right and title to the Pikmi Pops Marks.

52.     Plaintiffs have continuously used the Pikmi Pops Marks in interstate commerce since on or before the dates of first use as reflected in the registrations attached hereto as **Exhibit A**.

53.     Without Plaintiffs' authorization or consent, with knowledge of Plaintiffs' well-known and prior rights in their Pikmi Pops Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Pikmi Pops Marks and/or used spurious designations that are identical with, or substantially indistinguishable from, the Pikmi Pops Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

54.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiffs, in or affecting interstate commerce, and/or

have acted with reckless disregard of Plaintiffs' rights in and to the Pikmi Pops Marks through their participation in such activities.

55.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Pikmi Pops Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiffs, thereby making substantial profits and gains to which they are not entitled in law or equity.

56.     Defendants' unauthorized use of the Pikmi Pops Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs or their authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Pikmi Pops Marks.

57.     Defendants' actions constitute willful counterfeiting of the Pikmi Pops Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

58.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiffs, their business, their reputation and their valuable rights in and to the Pikmi Pops Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and unless immediately enjoined, Defendants

will continue to cause such substantial and irreparable injury, loss and damage to Plaintiffs and their valuable Pikmi Pops Marks.

59.     Based on Defendants' actions as alleged herein, Plaintiffs are entitled to injunctive relief, damages for the irreparable harm that Plaintiffs have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### (Infringement of Registered Trademarks)
### [115 U.S.C. § 1114/Lanham Act § 32(a)]

60.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

61.     Plaintiffs have continuously used the Pikmi Pops Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificate attached hereto as **Exhibit B**.

62.     Plaintiffs, as owners of all right, title and interest in and to the Pikmi Pops Marks, have standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

63.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiffs are the owners of the federal trademark registrations for the Pikmi Pops Marks.

64.     Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiffs, as the registered trademark owners of the Pikmi Pops Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display,

retail, offer for sale and/or sell Pikmi Pops Products and/or related products bearing the Pikmi Pops Marks into the stream of commerce.

65.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Pikmi Pops Marks and/or which are identical or confusingly similar to the Pikmi Pops Marks.

66.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Pikmi Pops Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

67.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiffs are the owners of all rights in and to the Pikmi Pops Marks.

68.     Defendants' egregious and intentional use of the Pikmi Pops Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiffs' Pikmi Pops Products or are otherwise associated with, or authorized by, Plaintiffs.

69.     Defendants' actions have been deliberate and committed with knowledge of Plaintiffs' rights and goodwill in the Pikmi Pops Marks, as well as with bad faith and the intent to

cause confusion, mistake and deception.

70.      Defendants' continued, knowing, and intentional use of the Pikmi Pops Marks without Plaintiffs' consent or authorization constitutes intentional infringement of Plaintiffs' federally registered Pikmi Pops Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

71.      As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiffs have suffered substantial monetary loss and irreparable injury, loss and damage to their business and their valuable rights in and to the Pikmi Pops Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiffs and the valuable Pikmi Pops Marks.

72.      Based on Defendants' actions as alleged herein, Plaintiffs are entitled to injunctive relief, damages for the irreparable harm that Plaintiffs have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
#### (False Designation of Origin, Passing Off & Unfair Competition)
#### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

73.      Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

74.      Plaintiffs, as the owners of all right, title and interest in and to the Pikmi Pops Marks, have standing to maintain an action for false designation of origin and unfair competition

under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

75.     The Pikmi Pops Marks are inherently distinctive and/or have acquired distinctiveness.

76.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly or substantially similar to, and constitute reproductions of the Pikmi Pops Marks and Pikmi Pops Works and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are the Pikmi Pops Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiffs and/or that Defendants are affiliated, connected or associated with Plaintiffs, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Pikmi Pops Marks and Pikmi Pops Works, to Defendants' substantial profit in blatant disregard of Plaintiffs' rights.

77.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiffs' Pikmi Pops Products using marks and/or artwork that is identical and/or confusingly or substantially similar to, or which constitute colorable imitations of the Pikmi Pops Marks and Pikmi Pops Works, Defendants have traded off the extensive goodwill of Plaintiffs and their Pikmi

Pops Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiffs. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiffs and their Pikmi Pops Marks, which Plaintiffs have amassed through their nationwide marketing, advertising, sales and consumer recognition.

78.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks and artwork that are identical or confusingly or substantially similar to and constitute reproductions of the Pikmi Pops Marks and Pikmi Pops Works would cause confusion, mistake or deception among purchasers, users and the public.

79.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiffs, their Pikmi Pops Products, Pikmi Pops Marks and Pikmi Pops Works.

80.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiffs by depriving Plaintiffs of sales of their Pikmi Pops Products and by depriving Plaintiffs of the value of their Pikmi Pops Marks and Pikmi Pops Works as commercial assets in an amount as yet unknown, but to be determined at trial, for which they have no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiffs and the goodwill and reputation associated with the value of Pikmi Pops Marks and Pikmi Pops Works.

81.     Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief

as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiffs have sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### (Federal Copyright Infringement)
### [17 U.S.C. § 501(a)]

82.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

83.     Plaintiffs are the exclusive owners of the Pikmi Pops Works.

84.     Defendants had actual notice of Plaintiffs' exclusive rights in and to the Pikmi Pops Works.

85.     Defendants did not attempt and therefore inherently failed to obtain Plaintiffs' consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market Plaintiffs' Pikmi Pops Products and/or Pikmi Pops Works.

86.     Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the Pikmi Pops Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products which bear such Pikmi Pops Works, or artwork that is, at a minimum, substantially similar to the Pikmi Pops Works.

87.     Defendants' unlawful and willful actions as alleged herein constitute infringement of the Pikmi Pops Works, including Plaintiffs' exclusive rights to reproduce, distribute and/or sell such Pikmi Pops Works in violation of 17 U.S.C. § 501(a).

88.     Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiffs in an amount as yet unknown but to be proven at trial, for which Plaintiffs have no adequate remedy at law, and unless enjoined, Defendants will continue to cause, substantial and irreparable harm to Plaintiffs.

89.     Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief, Plaintiffs' actual damages and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### (Violation of Deceptive Acts and Practices Unlawful)
### [N.Y. Gen. Bus. Law § 349]

90.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

91.     Through Defendants' unlawful, unauthorized and unlicensed use of the Pikmi Pops Works and/or Pikmi Pops Marks on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products which are identical and/or confusingly or substantially similar to Plaintiffs' Pikmi Pops Products, Defendants have engaged in consumer-oriented conduct that has adversely affected the public interest and has resulted in injury to consumers in New York.

92.     Defendants' aforementioned conduct was and is a willful and deliberate attempt to mislead consumers and constitutes the use of deceptive acts or practices in the conduct of business, trade or commerce.  Such conduct has deceived and materially mislead or has a tendency to deceive and materially mislead the consuming public, and has injured and will continue to injure Plaintiffs' business, reputation and goodwill in violation of N.Y. Gen. Bus. Law § 349.

93.     As a result of Defendants' actions alleged herein, Plaintiffs have suffered and will

continue to suffer irreparable harm for which they have no adequate remedy at law.

94.     Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiffs are entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorneys' fees.

<div align="center">

**SIXTH CAUSE OF ACTION**
**(False Advertising Unlawful)**
**[N.Y. Gen. Bus. Law § 350]**

</div>

95.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

96.     Without the authorization of Plaintiffs, Defendants have used the Pikmi Pops Marks and/or Pikmi Pops Works and/or marks and/or artwork and/or packaging designs that are identical and/or confusingly or substantially similar to the Pikmi Pops Marks and/or Pikmi Pops Works in connection with the advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products which are identical and/or confusingly or substantially similar to Plaintiffs' Pikmi Pops Products, causing confusion, mistake and deceiving consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

97.     Defendants' aforementioned willful and intentional conduct constitutes false advertising in the conduct of any business, trade or commerce and has injured and will continue to injure Plaintiffs' business, reputation and goodwill in violation of N.Y. Gen. Bus. Law § 350.

98.     As a result of Defendants' actions alleged herein, Plaintiffs have suffered and will continue to suffer irreparable harm for which they have no adequate remedy at law.

99.     Pursuant to N.Y. Gen. Bus. Law § 350(e), Plaintiffs are entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial,

costs, disbursements and attorneys' fees.

## SEVENTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]

100.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

101.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiffs and their Pikmi Pops Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiffs.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiffs, which Plaintiffs have amassed through their nationwide marketing, advertising, sales and consumer recognition.

102.    Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiffs' rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

103.    Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the

public.

104.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiffs' rights, and for the wrongful purpose of injuring Plaintiffs, and their competitive position while benefiting Defendants.

105.     As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiffs have been and will continue to be deprived of substantial sales of their Pikmi Pops Products in an amount as yet unknown but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and Plaintiffs have been and will continue to be deprived of the value of their Pikmi Pops Marks and Pikmi Pops Works as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiffs have no adequate remedy at law.

106.     As a result of Defendants' actions alleged herein, Plaintiffs are entitled to injunctive relief, an order granting Plaintiffs' damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

### EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)
### [New York Common Law]

107.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

108.     By virtue of the egregious and illegal acts of Defendants as described herein, Defendants have been unjustly enriched in an amount to be proven at trial.

109.     Defendants' retention of monies gained through their deceptive business practices, infringement, acts of deceit and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, inclusive, and each of them, as follows:

A.      For an award of Defendants' profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.      In the alternative to Defendants' profits and Plaintiffs' actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiffs may elect prior to the rendering of final judgment;

C.      For an award of Defendants' profits and Plaintiffs' damages in an amount to be proven at trial for willful trademark infringement of Plaintiffs' federally registered Pikmi Pops Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.      For an award of Defendants' profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of Plaintiffs' actual damages and Defendants' profits, pursuant to 17

U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement of the Pikmi Pops Works under 17 U.S.C. § 501(a);

F.      In the alternative to Plaintiffs' actual damages and Defendants' profits for copyright infringement of the Pikmi Pops Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 USC § 504(c) for willful copyright infringement, which Plaintiffs may elect prior to the rendering of final judgment;

G.      For an award of damages in an amount to be proven at trial for deceptive acts and practices unlawful pursuant to N.Y. Gen. Bus. Law § 349(h);

H.      For an award of damages to be proven at trial for false advertising pursuant to N.Y. Gen. Bus. Law § 350(e);

I.      For an award of damages to be proven at trial for common law unfair competition;

J.      For an award of damages in an amount to be proven at trial for unjust enrichment;

K.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

        i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing and/or Counterfeit Products;

        ii.  directly or indirectly infringing in any manner any of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the Pikmi Pops Marks or Pikmi Pops Works;

iii. using any reproduction, counterfeit, copy or colorable imitation of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the Pikmi Pops Marks and Pikmi Pops Works to identify any goods or services not authorized by Plaintiffs;

iv. using any of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the Pikmi Pops Works or Pikmi Pops Marks, or any other marks or artwork that are confusingly or substantially similar to the Pikmi Pops Marks or Pikmi Pops Works, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

v. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiffs;

vi. engaging in the unlawful, unfair or fraudulent business acts or practices,

including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.   engaging in any other actions that constitute unfair competition with Plaintiffs;

viii.  engaging in any other act in derogation of Plaintiffs' rights;

ix.   secreting, destroying, altering, removing, or otherwise dealing with the Counterfeit Products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

x.   from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, any money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) ("Defendants' Assets") from or to financial accounts associated with or utilized by any Defendant or any Defendant's User Accounts or Merchant Storefronts (whether said account is located in the U.S. or abroad) ("Defendants' Financial Accounts"), and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

xi.   from secreting, concealing, transferring, disposing of, withdrawing,

encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xii.  effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action;

xiii.  providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiv.  instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (xiii) above; and

L.    For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiffs' trademarks, copyrights or other rights including, without limitation, the Pikmi Pops Marks or Pikmi Pops Works, or bear any marks that are confusingly or substantially similar to the Pikmi Pops Marks or Pikmi Pops Works;

M.    For an order of the Court requiring that Defendants deliver up for destruction to Plaintiffs any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiffs' trademarks,

copyrights or other rights including, without limitation, the Pikmi Pops Marks or Pikmi Pops Works, or bear any marks that are confusingly or substantially similar to the Pikmi Pops Marks or Pikmi Pops Works pursuant to 15 U.S.C. § 1118;

N.    For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Infringing and/or Counterfeit Products as described herein, including prejudgment interest;

O.    For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiffs;

P.    For an award of exemplary or punitive damages in an amount to be determined by the Court;

Q.    For Plaintiffs' reasonable attorneys' fees;

R.    For all costs of suit; and

S.    For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all claims.


Dated: October 10, 2018                    Respectfully submitted,

                                           EPSTEIN DRANGEL LLP

                                           BY: 

                                           . Spencer Wolgang (SW 2389)
                                           swolgang@ipcounselors.com

Brieanne Scully (BS 3711)
bscully@ipcounselors.com
Mary Kate Brennan (MB 5595)
mbrennan@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:      (212) 292-5390
Facsimile:      (212) 292-5391
*Attorneys for Plaintiffs
Moose Toys Pty LTD; Moose
Creative Pty LTD; Moose Enterprise
Pty LTD; and Moose Creative
Management Pty LTD*

# EXHIBIT A

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Kayn Teyle Clayett*

Acting United States Register of Copyrights and Director

**Registration Number**

# VA 2-073-582

**Effective Date of Registration:**
October 31, 2017

---

## Title

|  |  |
|---|---|
| **Title of Work:** | Pikmi Pops Collector's Guide |

## Completion/Publication

|  |  |
|---|---|
| **Year of Completion:** | 2016 |
| **Date of 1st Publication:** | September 01, 2017 |
| **Nation of 1st Publication:** | United States |

## Author

|  |  |
|---|---|
| **• Author:** | Moose Creative Management Pty Ltd |
| **Author Created:** | 2-D artwork |
| **Work made for hire:** | Yes |
| **Domiciled in:** | Australia |

## Copyright Claimant

|  |  |
|---|---|
| **Copyright Claimant:** | Moose Creative Management Pty Ltd |
|  | 29 Grange Road, Cheltenham, VIC 3192, Australia |

## Rights and Permissions

|  |  |
|---|---|
| **Organization Name:** | Epstein Drangel LLP |
| **Email:** | mail@ipcounselors.com |
| **Telephone:** | (212)292-5390 |
| **Address:** | 60 East 42nd Street |
|  | Suite 2520 |
|  | New York, NY 10165 United States |

## Certification

|  |  |
|---|---|
| **Name:** | Kerry B. Brownlee |
| **Date:** | October 31, 2017 |

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Kayn Leigh Claypett*

Acting United States Register of Copyrights and Director

**Registration Number**
## VA 2-078-671
**Effective Date of Registration:**
December 11, 2017

## Title _____

        **Title of Work:**  Pikmi Pops Packaging Artwork

## Completion/Publication _____

      **Year of Completion:**  2016
  **Date of 1st Publication:**  September 01, 2017
  **Nation of 1st Publication:**  United States

## Author _____

    •      **Author:**  Moose Creative Management Pty Limited
      **Author Created:**  2-D artwork
  **Work made for hire:**  Yes
       **Domiciled in:**  Australia

## Copyright Claimant _____

  **Copyright Claimant:**  Moose Creative Management Pty Limited
                  29 Grange Road, Cheltenham, VIC 3192, Australia

## Limitation of copyright claim _____

  **Material excluded from this claim:**  2-D artwork, Pikmi Pops logo, and character art covered by VA 2-073-582

  **New material included in claim:**  2-D artwork, All other new 2-D artwork not specifically disclaimed, including,
                  but not limited to, design elements and backgrounds

## Rights and Permissions _____

  **Organization Name:**  Epstein Drangel LLP
          **Email:**  mail@ipcounselors.com
      **Telephone:**  (212)292-5390
       **Address:**  60 E. 42nd Street
                 Suite 2520
                 New York, NY 10165 United States

## Certification _____

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Karyn A. Temple*

Acting United States Register of Copyrights and Director

**Registration Number**
## VA 2-100-433
**Effective Date of Registration:**
April 26, 2018

## Title

**Title of Work:**  Pikmi Pops Season 2 Collector's Guide

## Completion/Publication

**Year of Completion:**  2017
**Date of 1st Publication:**  March 01, 2018
**Nation of 1st Publication:**  United States

## Author

- **Author:**  Moose Creative Management Pty Limited
  **Author Created:**  2-D artwork
  **Work made for hire:**  Yes
  **Domiciled in:**  Australia

## Copyright Claimant

**Copyright Claimant:**  Moose Creative Management Pty Limited
29 Grange Road, Cheltenham, VIC 3192, Australia

## Limitation of copyright claim

**Material excluded from this claim:**  2-D artwork, Pikmi Pops logo and background art covered by VA 2-073-582
**Previous registration and year:**  VA 2-073-582, 2017

**New material included in claim:**  2-D artwork, New 2-dimensional art, including, without limitation, 2-dimensional character drawings

## Rights and Permissions

**Organization Name:**  Epstein Drangel LLP
**Name:**  Jason M. Drangel
**Email:**  mail@ipcounselors.com
**Telephone:**  (212)292-5390
**Address:**  60 East 42nd Street

Suite 2520
New York, NY 10165 United States

## Certification

**Name:** Kerry B. Brownlee
**Date:** April 26, 2018

# EXHIBIT B

# United States of America

## United States Patent and Trademark Office

## PIKMI POPS SURPRISE!

**Reg. No. 5,455,654**

**Registered May 01, 2018**

**Int. Cl.: 16, 28**

**Trademark**

**Principal Register**

MOOSE CREATIVE MANAGEMENT PTY LTD (AUSTRALIA PTY LTD )
29 Grange Rd
Cheltenham Vic 3192
AUSTRALIA

CLASS 16: Erasers being stationery; adhesive stickers; adhesive printed stickers; printed paper; printed sewing patterns; printed stationery; trading cards being printed matter, other than for games; Drawing materials, namely, drawing paper, pencils, envelopes, art paper, paint brushes, paint palettes; writing materials, namely, writing paper, pencils, envelopes, art paper, paint brushes, paint palettes; children's paint-boxes; children's painting sets; artists' materials, namely, art pads, art paper, artists' brushes, artists' pastels, artists' pens; art paper; craft paper; paper articles for use in relation to craft; printed material, namely, instruction sheets in the field of board games; adhesive backed films for stationery purposes; adhesive gums for stationery or household purposes; pastes for stationery or household purposes

CLASS 28: Action figures being toys or playthings; action figure toys; children's toys, namely, action figure toys and collectible toy figures; figurines being toys; kits of parts sold complete for constructing toys namely toy model buildings, vehicles, action figures and pretend food; kits of parts sold complete for the assembly of toys namely toy model buildings, vehicles, action figures and pretend food; model mouldable plastic figures being toys or playthings; plush figures being toys; plush stuffed toys; plush toys; toys being playthings; Toys being playthings for sale in kit form, namely, action figure toys and collectible toy figures; Toys being playthings sold in kit form, namely, action figure toys and collectible toy figures; dolls; plush dolls; board games; card games; games; trading cards being card games; apparatus for electronic games adapted for use with an external display screen or monitor; portable games adapted for use with dot matrix liquid crystal displays

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

PRIORITY DATE OF 01-09-2017 IS CLAIMED

OWNER OF INTERNATIONAL REGISTRATION 1343953 DATED 02-21-2017, EXPIRES 02-21-2027

The wording "PIKMI" has no meaning in a foreign language.

SER. NO. 79-207,261, FILED 02-21-2017



Director of the United States
Patent and Trademark Office

> ## REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION
>
> ## WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and  an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# PIKMI POPS

**Reg. No. 5,357,254**

**Registered Dec. 19, 2017**

**Int. Cl.: 16, 28**

**Trademark**

**Principal Register**

MOOSE CREATIVE MANAGEMENT PTY LTD (AUSTRALIA Pty Ltd )
29 Grange Rd
Cheltenham Vic 3192, AUSTRALIA

CLASS 16: Erasers being stationery; adhesive stickers; adhesive printed stickers; printed paper; printed patterns; printed stationery; trading cards being printed matter; drawing materials; writing materials; children's paint-boxes; children's painting sets; artists' materials; art paper; craft paper; paper articles for use in relation to craft; printed material; adhesive backed films for stationery purposes; adhesive gums for stationery or household purposes; pastes for stationery or household purposes

CLASS 28: Action figures being toys or playthings; action figure toys; children's toys, namely, action figure toys and collectible toy figures; figurines being toys; kits of parts sold complete for constructing toys, namely, toy model buildings, vehicles, action figures and pretend food; kits of parts sold complete for the assembly of toys, namely, toy model buildings, vehicles, action figures and pretend food; model mouldable plastic figures being toys or playthings; plush figures being toys; plush stuffed toys; plush toys; toys being playthings; Toys being playthings for sale in kit form, namely, action figure toys and collectible toy figures; Toys being playthings sold in kit form, namely, action figure toys and collectible toy figures; dolls; plush dolls; board games; card games; games; trading cards being card games; apparatus for electronic games adapted for use with an external display screen or monitor; portable games adapted for use with dot matrix liquid crystal displays

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

PRIORITY DATE OF 01-09-2017 IS CLAIMED

OWNER OF INTERNATIONAL REGISTRATION 1343565 DATED 02-20-2017, EXPIRES 02-20-2027

The word(s) "PIKMI" has no meaning in a foreign language.

SER. NO. 79-207,085, FILED 02-20-2017

Performing the Functions and Duties of the
Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office

<div style="border:1px solid black">

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

</div>

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**Int. Cl.: 28**

**Prior U.S. Cls.: 22, 23, 38, and 50**

**United States Patent and Trademark Office**

Reg. No. 3,363,052

Registered Jan. 1, 2008

## TRADEMARK
### PRINCIPAL REGISTER



MOOSE ENTERPRISE PTY LTD (AUSTRALIA CORPORATION)
7-13 ARDENA COURT
EAST BENTLEIGH
MELBOURNE, AUSTRALIA 3165

FOR: TOYS AND PLAYTHINGS, NAMELY, COLLECTABLE TOY FIGURINES, NOT RELATING TO SPORTS, A SPORTS TEAM OR A SPORTS MASCOT, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 1-31-2003; IN COMMERCE 1-31-2003.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENTERPRISE", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF A MOOSE HEAD PROTRUDING FROM TWO CONCENTRIC CIRCLES. THE MOOSE HEAD IS THE COLOR GREEN EXCEPT FOR THE BLACK AND WHITE EYES, BLACK NOSTRILS AND WHITE INTERIOR PORTION OF THE MOUTH, WHICH IS OUTLINED IN BLACK. THE WORDS MOOSE ENTERPRISE APPEAR AROUND THE MOOSE HEAD AND WITHIN THE LIGHTER GREEN OUTER CIRCLE.

SN 78-143,771, FILED 7-15-2002.

TARAH HARDY, EXAMINING ATTORNEY

# United States of America

## United States Patent and Trademark Office



**Reg. No. 5,178,557**

**Registered Apr. 11, 2017**

**Int. Cl.: 9, 16, 28**

**Trademark**

**Principal Register**

Moose Enterprise Pty Ltd (AUSTRALIA Proprietary Limited Company )
29 Grange Rd
Cheltenham VIC 3192
AUSTRALIA

CLASS 9: Computer game software, namely, electronic game programmes and electronic game software; recorded electronic game software and programmes for use with electronic games of all kinds; computer programs for computer games; computer programs for playing games; computer programs for video games; computer game software; computer game software recorded on disc

CLASS 16: Paper; art paper; craft paper; printed instruction leaflets in the field of computer games, computer software, arts and crafts, and games and toys; erasers

CLASS 28: Toys, namely, collectible figurines, collectible animal figurines, collectible toy figures and collectible toy characters and collectable bendable toy characters, outfits for toys, pouches specially designed for toys and collector cases specially designed for toys; toys, namely, puppets, puzzles, electronic educational game machines for children, toy buildings, toy vehicles, toy building structures, toy construction sets, play sets for toy character figures, costumes for toy figures, fantasy character toy figures, toy action figures and accessories therefor; board games; dolls; excluding toys that are shaped like, resemble, depict, or incorporate pictures of moose

The mark consists of the wording "MOOSE" appearing above and between the antlers of the design of a moose head.

PRIORITY DATE OF 11-17-2014 IS CLAIMED

OWNER OF INTERNATIONAL REGISTRATION 1253005 DATED 11-21-2014, EXPIRES 11-21-2024

SER. NO. 79-167,677, FILED 11-21-2014
JAMES W MACFARLANE, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten  Years***
**What and When to File:**

- ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:*** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.